IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTTSDALE INSURANCE CO.,<br>　　　　　　　　　Plaintiff,<br>　　　v.<br>NEW CENTURY BUILDERS &<br>DEVELOPERS, LLC<br>　　　　　　　　　Defendant.<br><br>NEW CENTURY BUILDERS &<br>DEVELOPERS, LLC<br>　　　　　　　　　Counter Claimant,<br>　　　v.<br>SCOTTSDALE INSURANCE CO.,<br>　　　　　　　　　Counter Defendant. | CIVIL ACTION<br>NO. 22-3205 |

**Scott, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　**September 29, 2023**

## MEMORANDUM

　　In this declaratory judgment action, Scottsdale Insurance Company (Scottsdale) asserts that the general commercial liability insurance policy that it issued to a general contractor, New Century Builders & Developers, LLC (New Century), does not provide coverage for bodily injury that a subcontractor's employee sustained while working on one of New Century's construction projects. New Century disputes Scottsdale's interpretation of the insurance policy. New Century has filed a counterclaim that argues, in the alternative, that if Scottsdale's interpretation of the insurance policy is correct, then the policy offers illusory coverage. Scottsdale has filed a motion for judgment on the pleadings. For the reasons set forth below, this court grants Scottsdale's motion and declares that Scottsdale does not have to defend or indemnify New Century in an underlying state court lawsuit initiated by a subcontractor's employee.

1

I.      RELEVANT BACKGROUND

This case stems from an underlying lawsuit that remains pending in the Philadelphia Court of Common Pleas, and Scottsdale and New Century do not dispute that the underlying lawsuit raises the following allegations[1]: New Century served as the general contractor for a new residential housing construction project at a site in Flourtown, Pennsylvania, that was owned by MJ3 Properties, LLC (MJ3). Lucas's Compl. ¶¶ 9-10, ECF No. 1-3. On September 5, 2018, Bruno da Silva Lucas was framing interior walls at the construction site when he fell about 20 feet from the second floor down into the basement and sustained serious injuries. *Id.* at ¶¶ 12-15. Scottsdale and New Century do not dispute that Mr. Lucas was an employee of one of the subcontractors at the construction site.[2] On February 19, 2020, Mr. Lucas filed a personal injury lawsuit, *Lucas v. MJ3 Properties, LLC, et al.*, No. 200200509, in the Philadelphia Court of Common Pleas, suing MJ3, New Century, and several subcontractors at the construction site. *See id.* at 1; Compl. ¶¶ 7, 16, ECF No. 1; Answer & Countercl. ¶¶ 7, 16. Mr. Lucas generally claimed that New Century's negligence caused Mr. Lucas's injuries. *See* Lucas's Compl. ¶¶ 25-34, ECF No. 1-3.

Scottsdale issued a general commercial liability insurance policy to New Century that was effective from January 10, 2018, to January 10, 2019. *See* Compl. ¶ 28; Answer & Countercl. ¶ 28. Relevant portions of the policy are excerpted and further discussed *infra* at Part

---

[1]     Scottsdale attaches the complaint from the underlying action as Exhibit A to Scottsdale's Declaratory Judgment Complaint. To reduce confusion, references to the underlying action's complaint are "Lucas's Complaint, ECF No. 1-3"; any references to Scottsdale's complaint in the instant action are simply "Complaint."

[2]     Mr. Lucas's complaint does not state who Mr. Lucas's employer was, but both Scottsdale and New Century refer to Mr. Lucas as an employee of a subcontractor. *Cf.* Compl., Exs. C & D (Scottsdale's letters rejecting New Century's insurance claim); Answer & Countercl. ¶ 8, ECF No. 9. Therefore, the court assumes that Mr. Lucas worked as a subcontractor's employee.

III.A.2. New Century sought insurance coverage for its potential losses in the underlying lawsuit, and one of Scottsdale's claim specialists denied New Century's requests for coverage in letters dated March 24, 2020, and December 21, 2020. *See* Compl., Exs. C & D, ECF Nos. 1-5 & 1-6.

Scottsdale commenced this action on August 11, 2022, representing that New Century continued to challenge Scottsdale's denial of coverage. *See* Compl. ¶ 34. New Century responded with an answer and counterclaim on September 8, 2022. *See* Answer & Countercl., ECF No. 9. The parties' dispute centers on their differing interpretations of one portion of the policy – an endorsement added to the policy that is titled "Injury to Worker Exclusion" (IWE). Scottsdale asserts that the IWE applies, and that the policy therefore does not cover injuries that a subcontractor's employee sustains while working at New Century's construction site. *See* Compl. ¶¶ 36-45. New Century argues that, as written, the IWE does not exclude coverage for bodily injury sustained by a subcontractor's employee. *See* Answer & Countercl. ¶¶ 88-93. New Century's counterclaim posits that if the IWE *does* apply to exclude coverage for Mr. Lucas's injuries, then the policy offers only illusory coverage. *See id.* at ¶¶ 102-25. Scottsdale filed an answer to New Century's counterclaim on September 20, 2022. *See* Scottsdale's Answer to New Century's Countercl., ECF No. 11.

On October 27, 2022, Scottsdale filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Scottsdale's Mot. for J. on the Pleads., ECF No. 12 (Scottsdale's MJOP). New Century responded to Scottsdale's motion on November 10, 2022. *See* Answer to Scottsdale's MJOP, ECF No. 13; New Century's Br. Opp'n Scottsdale's MJOP, ECF No. 14 (New Century's Response). Scottsdale filed a reply brief on November 30, 2022. *See* Scottsdale's Reply Supp. MJOP, ECF No. 15 (Scottsdale's Reply).

This matter was transferred from the Honorable Paul S. Diamond to this court on

February 22, 2023. *See* Order, ECF No. 16. After holding an initial status conference on March 16, 2023, and an Initial Pretrial Conference pursuant to Rule 16 of the Federal Rules of Civil Procedure on July 17, 2023, the court's questions about New Century's illusory contract counterclaim were unresolved. *See* ECF Nos. 19 & 26. Thus, the court requested supplemental briefing and heard oral argument on August 23, 2023. *See* Scottsdale's Supp. Br., ECF No. 29; New Century's Supp. Br., ECF No. 30; Oral Arg. Tr., ECF No. 32. Scottsdale's motion is now ripe for disposition.

**II.    LEGAL STANDARDS**

A motion for judgment on the pleadings may be filed after the pleadings are closed but not too late to delay trial. *See* Fed. R. Civ. P. 12(c). The district court should grant the motion if the movant establishes that there are no material factual issues, and that the movant is entitled to judgment as a matter of law. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). In considering a motion for judgment on the pleadings, the district court accepts all of the allegations in the nonmoving party's pleadings as true and draws all reasonable inferences in favor of the nonmoving party. *See Zimmerman v. Corbett*, 873 F.3d 414, 417-48 (3d Cir. 2017).

The Declaratory Judgment Act provides that a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Parties to an insurance contract may invoke the Declaratory Judgment Act so that the district court may interpret those parties' obligations under an insurance contract, including whether an insurer must defend or indemnify the insured. *See State Farm Fire & Casualty Co. v. Rockinmusik LLC*, No. 22-4243, 2023 WL 3005009, *3 (E.D. Pa. Apr. 19, 2023). If the declaratory judgment action arises from an underlying action, the district court applies a two-part framework to determine whether the

insurer has a duty to defend or indemnify the insured in the underlying action: First, the court evaluates the scope of the policy's coverage, and second, the court examines the complaint in the underlying action to determine whether it triggers that coverage. *See id.*

### III. DISCUSSION

The parties dispute two main aspects of the policy: First, the parties dispute the proper interpretation of the policy's IWE. Scottsdale asserts that it is unambiguous and bars coverage in Mr. Lucas's underlying lawsuit, and New Century agrees that it is unambiguous, but contests that it is poorly written and must be literally applied so that it cannot bar coverage in Mr. Lucas's underlying lawsuit. Second, New Century argues in the alternative that if the IWE *does* apply, then it renders the policy illusory. As discussed further below, New Century's interpretation of the policy may be grammatically correct, but it is not a reasonable interpretation of the policy. Where there is only one *reasonable* interpretation of a policy term, it is unambiguous and enforceable. Moreover, the enforceability of the IWE does not render the policy illusory under Pennsylvania law.

    **A.    The Policy's Injury to Worker Exclusion (IWE) Is Unambiguous and Excludes Coverage in Mr. Lucas's Underlying Lawsuit**

        1.    <u>Relevant Principles of Contract Interpretation</u>

If a district court finds that an insurance contract's language is "clear and unambiguous," the court must enforce that language. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 363 (3d Cir. 2004). Contractual terms are ambiguous "when the questionable term or language, viewed in the context of the entire policy, is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (internal citation and quotations omitted). Put differently, an ambiguity exists if contractual terms "are subject to more than one reasonable interpretation when applied to a particular set of facts." *Canal Ins. Co. v. Underwriters at*

*Lloyd's London*, 435 F.3d 431, 435 (3d Cir. 2006) (internal citation and quotations omitted). Importantly, the court "must refrain from torturing the language of the policy to create ambiguities where none exist." *J.C. Penney Life Ins. Co.*, 393 F.3d at 363. Moreover, whenever it is possible, the court should avoid interpretations of the policy that create ambiguities and should give effect to all of the policy's provisions. *See Amer. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 321 (3d Cir. 2011). Finally, if the court determines that the terms of a policy *are* ambiguous, then the policy is "construed in favor of the insured and against the insurer." See *Gen. Refractories Co. v. First State Ins. Co.*, 855 F.3d 152 (3d Cir. 2017) (internal citation and quotations omitted).

    2.    The Policy's Structure & Disputed Policy Language

The policy has two main coverage sections: Coverage A pertains to bodily injury and property damage liability, and Coverage B pertains to personal and advertising injury liability. *See* Compl., Ex. B, 15, 20, ECF No. 1-4. Only Coverage A is at issue. Coverage A purportedly covers bodily injury and property damage liability for "occurrences" that occur within the "coverage territory" during the policy period, unless some other portion of the policy explicitly excludes coverage for that injury or property damage. *See* Compl., Ex. B, 15. For instance, there are exclusions outlined within the policy's Commercial General Liability Coverage Form for "Worker's Compensation and Similar Laws" and "Employer's Liability":

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> . . . .
> **2. Exclusions**
>    This insurance does not apply to:
> . . . .
> **d. Workers' Compensation And Similar Laws**
>    Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar

6

    Law.

    **e. Employer's Liability**
      "Bodily injury" to:
        (1) An "employee" of the insured arising out of and in the course of:
       (a) Employment by the insured; or
       (b) Performing duties related to the conduct of the insured's
           business; or
      (2) The spouse, child, parent, brother or sister of that "employee". . . .

*See id.* at 15-16.

An endorsement added to the policy titled "Injury to Worker Exclusion" (IWE) modifies and expands the exclusions of the policy's bodily injury coverage; the top of the document clearly states that "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY" and that it modifies insurance provided under the Commercial General Liability Coverage Form. *See id.* at 52-53. The IWE states in relevant part that:

> The following is added to **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, subsection **2. Exclusions** of the policy:
>
> This insurance does not apply to:
>
> 1.    "Bodily injury" to:
>
>     a.    An "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured;
>     b.    Any contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured; or
>     c.    Any employee or anyone directly or indirectly employed by such contractor, subcontractor or sub-subcontractor or anyone for whose acts such contractor, subcontractor or sub-subcontractor may be liable
>
> if such "bodily injury" arises out of and in the course of their employment or retention of such contractor, subcontractor or sub-subcontractor, regardless of whether or not it is caused in part by you . . . .

Compl., Ex. B, 52.

7

### 3. Proposed Interpretations of the IWE

Scottsdale's pleadings and MJOP generally excerpt the entire IWE and then assert that the IWE applies to Mr. Lucas's underlying lawsuit. *See* Compl. ¶¶ 30-31, 36-44, ECF 1; MJOP 10-13. Scottsdale's Reply Brief offers an interpretation of the IWE that does not pare down the IWE's language:

> [T]he Injury to Worker Exclusion, as its title suggests, has only one meaning and plainly bars coverage for "bodily injury" to: any contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured, or any employee or anyone directly or indirectly employed by such contractor, subcontractor, or sub-subcontractor or anyone for whose acts such contractor, subcontractor, or sub-subcontractor may be liable, if such "bodily injury" arises out of and in the course of their (1) employment (2) or retention of such contractor, subcontractor, sub-subcontractor, regardless of whether or not it is caused in part by New Century.

*See* Scottsdale's Reply 6-7 (internal citations omitted). Scottsdale then argues that the language "(2) or retention of such contractor, subcontractor or sub-subcontractor" does not apply to Mr. Lucas, because there is no evidence that Mr. Lucas retained his own contractors. However, Scottsdale posits that the first part of that clause—"(1) employment"—is applicable because Mr. Lucas was a subcontractor's employee who was injured while working, and thus his bodily injury "arise[d] out of and in the course of [his] employment." *See id* at 7.

New Century proposes that the IWE should be simplified "by eliminating [its] redundant and reducing it to its applicable and operative terms." *See* Resp. to MJOP 15. New Century then offers the following interpretation of the IWE:

> **THIS INSURANCE DOES NOT APPLY TO BODILY INJURY TO ANY EMPLOYEE EMPLOYED BY SUCH SUBCONTRACTOR IF SUCH BODILY INJURY ARISES OUT OF AND IN THE COURSE OF <u>THEIR</u> EMPLOYMENT <u>OF</u> SUCH CONTRACTOR, SUBCONTRACTOR OR SUB-SUBCONTRACTOR REGARDLESS OF WHETHER OR NOT IT IS CAUSED IN PART BY <u>YOU</u>.**

*See id.* (all emphasis in original). New Century next explains what "their" means, and concludes

that "their" refers to the "injured employee."[3] New Century then asserts that this IWE is defectively written, and it must be interpreted as it is written: "The exclusion would only apply if the bodily injury were suffered by the employee of the subcontractor [Mr. Lucas] <u>and</u> arose out of and in the course of <u>*his*</u> employment <u>*of*</u> a sub-contractor. It doesn't say his employment <u>***by***</u> a subcontractor". *See id.* at 15-16 (emphasis in original).

The disputed portion of the IWE is one long, complex sentence. The IWE's complexity does not mean that the IWE is incorrectly written, that it is ambiguous, or that any portion of it is meaningless. But it does mean that the court must work to digest it, particularly because Scottsdale and New Century have very different interpretative approaches—Scottsdale presents most of the IWE's text with minimal alteration, while New Century cuts it in half and declares the other words "redundant and inapplicable." To bridge that gap, the court offers both a structural interpretation and a distilled interpretation.

First, the IWE has a clear structural logic. Subparts (a), (b), and (c) outline three

---

[3] Specifically, New Century argues that

> [i]n this sentence, "*their*" refers to the antecedent ***injured employee*** of the subcontractor who suffered the "Bodily Injury". So, the phrase ***"their (injured employee's) employment of..."*** means the ***injured employee's*** employment ***of*** such "*contractor, subcontractor or sub-subcontractor*". Further evidence that the word "their" refers to the injured worker is found in the last clause of the exclusion that says "*regardless of whether the injury is caused in part by <u>you</u>* [referring to policyholder, New Century]".

*Id.* at 15 (emphasis in original). Scottsdale unpersuasively argues that New Century's interpretation of the policy is *not* grammatically correct. Scottsdale claims that "their" must be a plural pronoun, and that New Century errs by assuming that it is singular. *See* Scottsdale's Reply 8.

Merriam-Webster's Dictionary and the Oxford English Dictionary both acknowledge that "their" can be either a singular gender-neutral pronoun or a plural pronoun. *See They*, *Merriam-Webster's Unabridged Dictionary* (2023), https://unabridged.merriam-webster.com/unabridged/they[1]; *They*, entry I.2, *Oxford English Dictionary* (2023), https://www.oed.com/dictionary/they_pron?tab=meaning_and_use#18519279. Based on these definitions, the court is not compelled to adopt Scottsdale's argument that "their" must be strictly interpreted as a plural pronoun. Moreover, Scottsdale's interpretation is not reflected in the plain language of the IWE: All of the subjects that "their" could possibly refer to are singular subjects. For example, "their" could refer to "[a]n 'employee,' 'leased worker,' temporary worker' or 'volunteer worker' of any insured"—those are all singular subjects.

categories of people or entities: subpart (a) pertains to "any insured['s]" employees and other types of people who work directly for an insured; subpart (b) pertains to "[a]ny contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured"; and subpart (c) pertains to anyone directly employed by or indirectly working for an insured's contractor, subcontractor, or sub-subcontractor. Those three categories are then followed by an "if" clause, which really appears to be the focal point of Scottsdale and New Century's dispute. Because subparts (a), (b), and (c) are separated by "or", an injured person needs to belong to either category (a) *or* category (b) *or* category (c) to possibly be subject to the IWE. Thus, the IWE applies if (1) bodily injury occurs (as defined in another part of the policy), *and* (2) the person who suffers bodily injury falls into either subpart (a) *or* (b) *or* (c), *and* (3) the "if" clause is triggered. Again, the "if" clause states that the insurance does not apply "if such 'bodily injury' arises out of and in the course of their employment or retention of such contractor, subcontractor or sub-subcontractor, regardless of whether or not it is cause in part by you."  The "if" clause also has multiple "ors" within it, which indicates that some of the language within the "if" clause is *optional*; the injured person might fit within one part of the "if" clause but not another. It makes sense that there is optional language within that "if" clause: Logically, the "if" clause needs to be broad enough to correspond to *any and all* of the three possible categories of injured people.[4] So, if an injured person falls only into subcategory (c), some of the language in the "if"

---

[4] To illustrate, the "if" clause includes the language "such contractor, subcontractor or sub-subcontractor". What does "such" refer to? There is no other appearance of "contractor, subcontractor or sub-subcontractor" earlier in the "if" clause, so it must refer back to a clause earlier in the IWE. Looking at the subcategories directly above the "if" clause, subcategory (c) also uses the language "*such* contractor, subcontractor or sub-subcontractor" (twice). Subcategory (b) marks the first appearance of the phrase, and it states "[a]ny contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured". Thus, in context, the phrase "such subcontractor, subcontractor or sub-subcontractor," refers back to subcategory (b) and means "[a]ny contractor, subcontractor, [or] sub-subcontractor . . . hired or retained by or for any insured." This language in the "if" phrase has no connection to subpart (a). Therefore, some of the language in the "if" clause could be superfluous to one of the subcategories of injured people.

clause might be superfluous to that type of injured person. Finally, the "if" clause ends with a disclaimer: the IWE applies "regardless of whether or not it [the bodily injury] is caused in part by you". Scottsdale and New Century do not dispute that, in context, "you" refers to New Century, the insured.

Second, it is possible to distill the IWE down to language that is relevant to Mr. Lucas's injury, because the parties agree that (1) Mr. Lucas was an employee of a subcontractor that New Century retained for a construction project, and (2) Mr. Lucas alleges that he suffered bodily injury while working on that construction project. New Century and Scottsdale agree that subsection (c) might apply to Mr. Lucas. Thus, the court offers a simplified interpretation of the IWE, and aligns it with the original text and New Century's proposed interpretation:

| **Original Policy Language** | **New Century's Interpretation**[5] | **The Court's Interpretation** |
|---|---|---|
| This insurance does not apply to bodily injury to . . . | This insurance does not apply to bodily injury to | This insurance does not apply to bodily injury to |
| (c) Any employee or anyone directly or indirectly employed by such contractor, subcontractor or sub-subcontractor or anyone for whose acts such contractor, subcontractor or sub-subcontractor may be liable | any employee  employed by such subcontractor | any employee . . . directly . . . employed by such . . . subcontractor [*i.e.*, a subcontractor retained by or for any insured[6]] . . . |
| if such "bodily injury" arises out of and in the course of their employment or retention of such contractor, subcontractor or sub-subcontractor, | if such bodily injury arises out of and in the course of their employment **of such contractor, subcontractor or sub-subcontractor** | if such "bodily injury" arises out of and in the course of their employment . . . , |

---

[5]     *See supra* p. 7 (quoting Compl., Ex. B, 52) for a longer excerpt of the IWE. *See supra* p. 8 (quoting Resp. to MJOP 15) for New Century's proposed interpretation. The court removes New Century's emphases and breaks up phrases to align them with portions of the original text. The bolded text in New Century's interpretation highlights the only portion of New Century's interpretation that substantially departs from the court's interpretation.

[6]     See *supra* note 3 for an explanation of the "such . . . subcontractor" phrasing.

| regardless of whether or not it is caused in part by you[.] | regardless of whether or not it is caused in part by you. | regardless of whether or not it is caused in part by [the insured]. |

As illustrated above with bolded language, New Century and the court pare down the IWE in slightly different ways that result in two different interpretations of the "if" clause:

New Century's proposed interpretation: "if such bodily injury arises out of and in the course of" (1) "their employment . . . of such contractor . . ." **_or_** (2) "their . . . retention of such contractor . . .".

The court's interpretation: "if such bodily injury arises out of and in the course of" (1) "their employment" **_or_** (2) "their . . . retention of such contractor, subcontractor or sub-contractor."

To emphasize the differences in interpretation, the court breaks the sentence into multiple elements, divided by "ors," adds pronouns to each element for clarity,[7] and reintroduces ellipses that New Century omitted from its proposed simplified interpretation. Both of these interpretations are grammatically correct, but lead to different applications of the IWE. In New Century's version, an injured worker triggers the IWE only if that injured worker is also a contractor, subcontractor, or sub-subcontractor. In the court's version, an injured worker triggers the IWE if that injured worker is injured *either* in the course of the worker's employment *or* due

---

[7]   It is common to drop a pronoun or any other language that could be repeated throughout a parallel list. For instance, it is not necessary to state that "Beyoncé sings, Beyoncé dances, and Beyoncé acts." It is grammatically correct to write "Beyoncé sings, dances, and acts." When we read that simplified parallel sentence, we understand that Beyoncé is the subject who performs all three actions in the list. Here, the parallel list is two phrases separated by "or", and the reader can assume that "their" could appear before each element of that parallel list.

   This exercise highlights a difficulty in reading the "if" clause: We can very easily understand a balanced parallel list, such as "Beyoncé [sings], [dances], and [acts]." An unbalanced list will often seem awkward: "in the course of their [employment] or [retention of such contractor, subcontractor, or sub-subcontractor]." Importantly, though, that imbalance or awkwardness does not make the policy's "if" clause either grammatically incorrect or ambiguous as a matter of law.

to the injured person's or entity's retention of a contractor, subcontractor, or sub-subcontractor.[8]

### 4. New Century's Proposed Interpretation of the IWE is Not Reasonable

New Century has identified a second interpretation of the IWE that is grammatically correct, but it does not automatically follow that the IWE is ambiguous. A contractual term is ambiguous only if, when it is "viewed in the context of the entire policy, [the term] is reasonably susceptible of different constructions and capable of being understood in more than one sense." *J.C. Penney Life Ins. Co.*, 393 F.3d at 363. New Century's proposed interpretation of the IWE is not a *reasonable* interpretation of the IWE.

New Century's interpretation is not reasonable because it flouts two key principles of contract interpretation: (1) It fails to give effect to all of the provisions of the IWE, and (2) it tortures the policy's language to create the appearance of an ambiguity. *See* Scottsdale's Reply 9-10, ECF No. 15. New Century's interpretation of the policy requires striking out part of the "if" clause, so that "their employment or retention of such contractor" becomes "their employment of such contractor." New Century's creative trimming would create a very strange gap in the policy: Specifically, (1) the policy would *not* cover Mr. Lucas's bodily injuries if Mr. Lucas was one of New Century's employees, and (2) the policy would *not* cover Mr. Lucas's bodily injuries if Mr. Lucas worked for New Century's subcontractor *and* Mr. Lucas retained his own sub-subcontractor, but (3) the policy *would* cover Mr. Lucas's bodily injuries if Mr. Lucas worked for New Century's subcontractor *and* Mr. Lucas did not retain any of his own employees. The purpose of the IWE appears to be to modify the standard "bodily injury" exclusion in the Commercial General Liability Coverage Form specifically to consider the reality

---

[8] As discussed further at note 10, *infra*, it is not clear how bodily injury would arise out of the retention of a contractor, subcontractor, or sub-subcontractor, but not fall within any other portion of the IWE. However, it is unnecessary for the court to resolve this issue.

that insureds might retain independent contractors and might not solely have their own employees or volunteer workers at their worksites. It is not reasonable to assume that the IWE is meant to exclude such a large category of workers, and New Century has offered no reason why that would be a reasonable interpretation. Moreover, the words "or retention of" are not meaningless when considered in the context of the entire IWE—those three words specifically correspond to the language of subpart (b) of the IWE, which contemplates a scenario in which some injured person has been "retained by or for the insured".[9] Considering the overall structure of both the policy's normal exclusion of coverage for bodily injury sustained by an employee and the overall structure of the IWE (rather than just the narrow language that is applicable to Mr. Lucas), it simply is not reasonable to assume that the policy drafter could have intended such disparate results.

Fortunately, it is not necessary for the court to apply New Century's interpretation of the policy. Where there are two grammatically correct interpretations of the IWE, and where one interpretation is simply unreasonable in the broader context of the IWE's structure, and where the other interpretation gives effect to all portions of the IWE, the court applies the only reasonable interpretation of the IWE.

### 5. Mr. Lucas's Alleged Injury Falls Within the Plain Language of the IWE

As mentioned above, declaratory judgment actions involving insurance disputes have a two-step analysis, where the court must (1) evaluate the scope of the policy's coverage and (2) examine the complaint in the underlying action to determine whether that coverage is triggered.

---

[9] It is difficult to imagine a scenario in which a person's bodily injury could arise from that person's retention of a contractor, subcontractor or sub-subcontractor, but *not* arise from that person's own employment. It is also difficult to imagine a scenario in which a person who experiences bodily injury contemplated by the IWE would fit subsection (b) *but not* subsections (a) or (c). But New Century *agrees* that Mr. Lucas fits into subsection (c). The existence of language that might never get triggered does not render the IWE ambiguous, particularly as it applies to Mr. Lucas's underlying lawsuit.

First, the court has determined above that the IWE excludes policy coverage for worksite injuries sustained by several categories of workers, including the employees of New Century's subcontractors. Second, the court must consider whether Mr. Lucas's complaint in the underlying action triggers policy coverage. Mr. Lucas's complaint alleges that he was injured while he worked at a construction site in which New Century functioned as a general contractor. New Century and Scottsdale also agree that Mr. Lucas was employed by a subcontractor that New Century retained to work at that construction site. Therefore, the court finds that the policy's IWE is unambiguous and policy coverage is not triggered by Mr. Lucas's underlying lawsuit.

### B. The Policy Does Not Offer Only Illusory Coverage

New Century's counterclaim asserts that if the IWE is unambiguous and applies to bar coverage for bodily injury to a subcontractor's employee, then the policy is illusory in the context of New Century's work as a general contractor. *See* Answer ¶¶ 102-25.

According to Pennsylvania law, insurance coverage is illusory only if the insured has purchased no effective protection. *See Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 549, 562 (E.D. Pa. 2021); *Jones v. GEICO Choice Ins. Co.*, 617 F. Supp. 3d 275, 280 (E.D. Pa. 2022). A policy is not illusory merely because it has a potentially wide exclusion; it is illusory if it "would not pay benefits under any reasonably expected set of circumstances." *PNC Fin. Servs. Grp., Inc. v. Houston Cas. Co.*, 647 F. App'x 112, 119 (3d Cir. 2016) (quoting *ACE Cap. Ltd. v. Morgan Waldon Ins. Mgmt., LLC*, 832 F. Supp. 2d 554, 572 (W.D. Pa. 2011)).

Here, the policy is not illusory. As discussed above, the IWE exclusion is not ambiguous and extends to subcontractors and the employees of subcontractors. This means that many of the bodily injuries that might occur at New Century's construction sites will not be covered by the

policy. However, the policy would pay benefits under some reasonably expected circumstances, including some situations where bodily injury occurs.

At oral argument, Scottsdale provided examples of situations in which the policy could cover bodily injuries, property damage, and other injuries and losses: First, the policy could cover bodily injuries to "third parties," such as "[t]respassers, delivery men, building inspectors, garbage collectors, [and] vendors" that are injured on New Century's construction sites. *See* Oral Arg. Tr. 11; *see also* Pl.'s Supp. Br. 7, ECF No. 29 ("if a child trespasses onto a work site at night and gets injured," the policy would require Scottsdale to defend and indemnify New Century in a subsequent lawsuit). Second, if a property owner were to retain separate contractors to do work on a site in which New Century functions as a general contractor, injuries sustained by the separate contractors possibly could be covered under the policy. *See* Oral Arg. Tr. 11-12. Third, there are cases in which the policy would cover property damage that New Century or its subcontractors might cause at a work site. *See id.* at 10. Fourth, the policy covers certain types of advertising injuries. *See id.* at 9.

Instead of responding specifically to any of Scottsdale's concrete examples of what could be covered under the policy, New Century asserted two general arguments, and the court finds both to be unpersuasive. First, New Century argues that the policy is supposed to be a general commercial liability policy, but if the IWE applies, it becomes little more than a "residential homeowners' policy" or "standard homeowners' policy." *See* Answer ¶ 112; Def.'s Supp. Br. 8, ECF No. 30; Oral Arg. Tr. 28, 29-31. Even with the application of the IWE, the policy is still distinct from a "standard homeowners' policy" in at least one way: Unlike a homeowner's policy, which generally applies to a specific residence that the policyholder owns, this general commercial liability policy follows New Century to any worksite in which it operates as a

16

general contractor and is not specific to just one static worksite. But even if the court could agree with New Century that if this IWE applies, the policy is no better than a standard homeowner's policy, New Century has cited no case law that would give this comparison some legal significance for an illusory policy argument. Without case law, it is unclear why the court should depart from the well-established legal principle that an illusory contract is one that offers *no* effective protection to find that a general commercial liability policy is illusory if it does not cover most or many of the bodily injuries suffered at the insured's worksite(s).

      Second, New Century argues that this case is analogous to *Heller v. Pennsylvania League of Cities & Municipalities*, 32 A.3d 1213 (Pa. 2011). *See* Def.'s Supp. Br. 10-11; Oral Arg. Tr. 26 ("this is no different than *Heller*"). In *Heller*, the Pennsylvania Supreme Court held that an insurance policy was illusory because its underinsured motorist (UIM) coverage would effectively never pay out in any circumstances for the insured. *Heller*, 32 A.3d at 1225. A borough paid an extra premium specifically for UIM coverage to ensure that its employees would have extra insurance coverage if they had accidents in the borough's fleet of vehicles. *See id.* at 1222-23. However, the policy would not cover any claims in which an employee would be eligible for workers' compensation. *See id.* at 1223. In practice, "the vast majority" of claims arising from car accidents would be made by borough employees who were eligible for workers' compensation. *See id.* Theoretically, the UIM coverage could have applied to non-employee passengers who are harmed in car accidents, but the *Heller* majority was "unable to conclude that the Borough intended to purchase $100,000 in coverage for a class of transient, and potentially unauthorized, vehicle occupants that are the exception rather than the norm." *Id.* at 1223 n.19. Therefore, based on the factual circumstances of the case, the insurer "sold the Borough

additional coverage that, in effect, [would] not attach by virtue of an exclusion," and received a "windfall by charging the Borough a premium for that coverage." *See id.* at 1223.

Here, the policy that New Century purchased covers many examples of trespassers, guests, and business invitees who might reasonably get hurt at any one of New Century's construction sites. Although most of the people at New Century's construction sites are presumably working directly or indirectly for New Century, it cannot be said that trespassers, guests, and business invitees at a construction site are analogous to the "class of transient, and potentially unauthorized, vehicle occupants" that the *Heller* majority considered to be the "exception rather than the norm" for the occupants who might be harmed in car accidents involving an employer's fleet of vehicles.

Moreover, there is no evidence in the record that New Century paid a special premium for bodily injury to its own employees or to its subcontractor's employees. New Century has argued that by signing an endorsement titled "Contractors Special Conditions—General Contractors Endorsement" that, among other provisions, required New Century to pay an additional premium for each independent contractor on its work site that did not certify that it had insurance coverage equal to or greater than New Century's insurance coverage. *See* Compl., Ex. B, 61 (Contractors Special Conditions—General Contractors Endorsement);[10] Resp. to MJOP 5-6; Def.'s Supp. Br. 4, 11. There is no evidence in the record that New Century in fact

---

[10] Specifically, the increased premium charge would be "computed by multiplying a rate per $1,000 of 'total cost' of all sublet work" that was performed by an independent contractor that did not have coverage equal to or greater than New Century's coverage under the policy. *See* Compl., Ex. B, 61. The policy defines "total cost" as "the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid." *See id.*

paid any additional premium.[11] But assuming arguendo that New Century paid an additional premium, that would not make this policy comparable to the UIM coverage that was at issue in *Heller*. As Scottsdale has repeatedly argued, the additional premium would trigger only if New Century chose to work with independent contractors who did not have equal insurance coverage. *See* Pl.'s Supp. Br. 6-7; Oral Arg. Tr. 12-13. Bodily injury or property damage that occurs at one of New Century's work sites could be caused by New Century, a subcontractor, or a combination of both New Century and its subcontractors. The additional premium payment would defray some of the additional risk that Scottsdale assumes that it will pay out for harms that are not solely inflicted by its insured or the insured's employees, and New Century has the choice of paying that additional premium or only retaining subcontractors that produce proof of insurance. This is not comparable to the sort of windfall that the insurer received in *Heller,* which was specifically a $100,000 premium for UIM coverage that effectively would not cover anything.

In sum, the policy offers coverage in several reasonably expected sets of circumstances, including some circumstances involving bodily injury. The IWE does not swallow any one provision of the policy. And New Century's arguments do not persuade the court that, if the IWE applies, the policy effectively offers no coverage. Thus, the enforceability of the IWE does not render the policy's coverage illusory.

---

[11] Scottsdale attaches a copy of the policy to its complaint that redacts premium cost information. *See* Compl., Ex. B, 8, 47-49. New Century attaches a copy of the policy to its Response to Scottsdale's MJOP that has unredacted premium information. *See* New Century's Resp., Ex. A, 2, 4-6. The unredacted forms show that New Century's policy total was calculated as $4,063.40; "Commercial General Liability Coverage" was assessed as $3,780, and the remaining $283.40 was for fees and taxes. *See id.* at 2. None of the attached exhibits reflect that New Century paid $1,000 for any uninsured or underinsured subcontractors.

## IV. CONCLUSION

For the foregoing reasons, the IWE is not ambiguous, and it does not render the policy's coverage illusory. The IWE applies to Mr. Lucas's underlying lawsuit because the parties do not dispute that Mr. Lucas alleges that he suffered bodily injury while working, and the parties do not dispute that Mr. Lucas was an employee of one of New Century's subcontractors. Therefore, Scottsdale's motion for judgment on the pleadings is granted. As a matter of law, Scottsdale owes no duty to defend or indemnify New Century in Mr. Lucas's underlying lawsuit.

BY THE COURT:

/s/ Kai N. Scott
**HON. KAI N. SCOTT**
**United States District Court Judge**